**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CHOPPER TRADING LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 19-cv-1674** |
| | ) | |
| **v.** | ) | **Judge Jeffrey I. Cummings** |
| | ) | |
| **ALLSTON TRADING LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Chopper Trading LLC ("Chopper") filed this lawsuit on March 9, 2019, (Dckt. #1), against defendant Allston Trading LLC ("Allston") alleging that Allston violated (1) Section 10(b) of the Securities Exchange Act of 1934 ("SEA"), (2) Securities and Exchange Commission Rule 10b-5 ("Rule 10b-5"), and (3) the Illinois Consumer Fraud Act ("ICFA") by manipulating the U.S. Treasury markets from 2012 to 2015 through a trading strategy known as "spoofing."

At the time it filed this case, Chopper also filed an arbitration demand with the Chicago Mercantile Exchange ("CME"). In the CME arbitration, Chopper argued that the statute of limitations for its claims was tolled because it did not know, and could not have reasonably known, of the facts needed to assert its spoofing claims until 2018. Following an evidentiary hearing, the CME disagreed with Chopper and denied its arbitration demand as "untimely and without basis for tolling" in a October 26, 2020 written order. (Dckt. #113-4 at 5).[1]

---

[1] "In deciding a motion to dismiss, the Court is permitted to take judicial notice of arbitration orders and filings." *Johnson v. Thompson-Smith*, 203 F.Supp.3d 895, 900 n.1 (N.D.Ill. 2016), *aff'd*, 700 Fed.Appx. 535 (7th Cir. 2017); *Green Tree Fin. Corp. v. Honeywood Dev. Corp.*, No. 98 C 2332, 2001 WL 62603, at *3 & n.4 (N.D.Ill. Jan. 24, 2001) (taking judicial notice of an arbitration demand and order issued in connection with liability phase of the arbitration on a motion to dismiss notwithstanding the fact that they were not referenced in the complaint).

Allston now moves to dismiss Chopper's first amended complaint ("Complaint"), (Dckt. #27), arguing, among other things, that Chopper's claims are barred by the doctrine of collateral estoppel because the parties previously litigated the timeliness of Chopper's claims in the CME arbitration and those claims were unambiguously resolved against Chopper. (Dckt. #108). Allston further argues that Chopper's claims are barred by the statute of limitations and that Chopper has not adequately pleaded its federal securities fraud and ICFA claims. For the reasons set forth below, the Court agrees that Chopper's claims are barred by the doctrine of collateral estoppel and are otherwise untimely. Allston's motion to dismiss, (Dckt. #108), is therefore granted and Chopper's claims are dismissed with prejudice.

## I.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a motion to dismiss under Rule 12(b)(6), the Court construes "the complaint in the light most favorable to the [non-moving party] accepting as true all well-pleaded facts and drawing reasonable inferences in [the non-moving party's] favor." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). Dismissal of an action under Rule 12(b)(6) is "warranted only if no relief could be granted under any set of facts that could be proved consistent with the allegations." *Christensen v. Cnty. of Boone*, 483 F.3d 454, 458 (7th Cir. 2007). Nonetheless, courts are permitted to consider "any facts set forth in the complaint that undermine the plaintiff's claim." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

## II.     THE MATERIAL THAT WILL BE CONSIDERED WHEN RESOLVING DEFENDANTS' MOTION TO DISMISS

Both parties have attached a number of exhibits for the Court's consideration, and a threshold question is raised as to whether it is appropriate to consider some (or all) of this material when resolving Allston's motion to dismiss.  It is well-settled that courts are permitted to consider facts that are included within: (1) "exhibits attached to the complaint;" (2) "documents referenced in the pleading if they are central to the claim;" and (3) "materials outside the pleadings" that are cited by plaintiff "to illustrate the facts the party expects to be able to prove."  *Bogie*, 705 F.3d at 609 (cleaned up); *Esco v. City of Chicago*, 107 F.4th 673, 678 (7th Cir. 2024); *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (citing *Early v. Bankers Life and Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992)).  Courts are also permitted to consider "information that is properly subject to judicial notice" when ruling on a motion to dismiss.  *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 493 n.2 (7th Cir. 2017) (cleaned up); *Holmes v. Marion County Sheriff's Office*, 141 F.4th 818, 822 (7th Cir. 2025).

The parties dispute whether the Court can consider a January 2015 purchase agreement (the "2015 Agreement") between Chopper and DRW Holdings, LLC ("DRW") when ruling on the motion to dismiss.  In its Complaint, Chopper alleges that in January 2015, it "sold the majority of its assets to DRW . . . [and that a]s part of the sale, Chopper retained all claims based on spoofing against any market participant."  (Dckt. #27 ¶8).  In the 2015 Agreement, however, Chopper expressly excluded from its sale to DRW "all claims" against Allston for "spoofing trading activities" prior to the date its sale to DRW closed.  (Dckt. #113 at 12–13).  Although Chopper concedes that it referenced the 2015 Agreement in its Complaint "to demonstrate standing," Chopper nonetheless argues that the 2015 Agreement is external to the Complaint and thus beyond the scope of review on motion to dismiss.  Allston, on the other

hand, argues that the 2015 Agreement can be considered on this motion because it is "central" to Chopper's Complaint. This Court agrees with Allston.

By invoking the carve out in the 2015 Agreement to demonstrate standing, Chopper rendered the 2015 Agreement "central" to its claims. *See, e.g.*, *Johnson v. Darren Findling L. Firm, PLC*, No. 22-cv-5517, 2023 WL 5289338, at *8 (N.D.Ill. Aug. 17, 2023) ("The complaint expressly mentions the agreement. And it is central to Plaintiff's claim because the complaint alleges that, but for the agreement's carveout, Plaintiff could not bring his claims at all."). If it had no standing, Chopper could not bring this lawsuit, let alone possibly prove its claims against Allston. Accordingly, because the 2015 Agreement is central to Chopper's claims and is referenced in Chopper's Complaint, it is appropriate for the Court to consider the 2015 Agreement when ruling on Allston's motion to dismiss.[2]

When ruling on this motion, the Court—consistent with the authority cited above—will also consider: (1) the CME arbitration panel's July 1, 2020 and October 26, 2020 orders that were issued during the parties' CME arbitration, (Dckt. ##113-2; 113-4); (2) an excerpt from Allston's pre-hearing brief submitted in the same arbitration, which Chopper filed as an exhibit to its opposition to the motion to dismiss, (Dckt. #120-1); and (3) representations within Chopper's opposition brief regarding the evidence that Chopper presented during the arbitration hearing.[3] (*See* Dckt. #120 at 11 (citing Dckt. #113-3)).

---

[2] The fact that Allston, rather than Chopper, submitted the 2015 Agreement for the Court's consideration is of no moment. *See, e.g.*, *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("In effect, the incorporation-by-reference doctrine provides that if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment.").

[3] "The Court may consider th[ese] representations in [Chopper's] response brief to be a judicial admission" for purposes of this motion to dismiss. *See, e.g.*, *Miller v. Fryzel*, No. 12 C 10160, 2014 WL 3509491, at *4 (N.D.Ill. July 15, 2014); *Fed. Hous. Fin. Agency v. City of Chicago*, 962 F.Supp.2d 1044, 1051 n.6 (N.D.Ill. 2013); *Mopex, Inc. v. Barclays Glob. Invs., N.A.*, No. 01 C 5976, 2003 WL 880996, at *2–3 (N.D.Ill. Mar. 5, 2003).

4

III.    FACTUAL BACKGROUND

A.    The parties.

Chopper, a limited liability corporation, "was, in effect, a market maker for U.S. Treasury instruments . . . which traded cash Treasury instruments on electronic platforms such as BrokerTec and eSpeed" until it sold the majority of its assets in January 2015.  (Dckt. #27 ¶¶8, 9).  Allston, also a limited liability corporation, likewise "traded most types of cash Treasury instruments on BrokerTec and eSpeed."  (*Id.* ¶10).

B.    Allston's alleged spoofing strategy.

Chopper alleges that on several thousand discrete instances from 2012 through October 14, 2014, Allston manipulated the U.S. cash Treasury markets through spoofing.  (*Id.* ¶¶1, 18–19, 38, 40; Dckt. #28 at 2–95 (identifying the instances and details surrounding Allston's spoofing)).  The Complaint, with citation to the U.S. Securities and Exchange Commission, describes spoofing as follows:

> In a spoofing scheme, a trader places non-bona fide orders—spoofs—that the trader does not intend to have executed, on one side of the market.  The non-bona fide buy or sell orders create a false appearance of buy or sell interest in the security, which often results in a price change.  The trader who placed the non-bona fide orders then places bona fide orders on the opposite side of the market for the same [security], in an attempt to take advantage of any price change resulting from the false appearance of buy or sell interest.  Immediately after the bona fide orders are executed, the trader cancels the open, non-bona fide order.

(Dckt. #27 ¶15, *quoting Briargate Trading, LLC, et al.*, Securities Act Release No. 9959, Securities Exchange Act Release No. 76104 (SEC Oct. 8, 2015)).

Chopper alleges that Allston's conduct was designed to, and did, harm Allston's competitors.  (Dckt. #27 ¶5).  This included Chopper, who entered into losing trades as a result of Allston's spoofing and "was prevented from executing other profitable trades because of the liquidity" tied to Allston's spoofing.  (*Id.* ¶¶56, 58).  More specifically, Chopper alleges that

"Allston's trading induced [Chopper] into modifying its trading behavior to its own detriment once [Allston's] Deceptive Orders were cancelled and the crossing [Allston] Aggressor Orders were entered,"[4] and "Allston's spoofing caused millions of dollars in trading losses for Chopper." (*Id.* ¶¶37, 41). The trades were anonymous at the time and "the identity of any trader behind a specific [trade was] confidential and known only to BrokerTec and eSpeed." (*Id.* ¶14).

### C. Chopper sells its trading assets but retains its rights to claims against Allston for spoofing activities.

As a result of its losses caused by Allston's spoofing, Chopper was "forced to sell its trading assets" to DRW in January 2015, "for significantly less than it would have otherwise obtained." (*Id.* ¶¶5, 42, 58). As part of the sale, Chopper entered into an Asset Purchase Agreement (i.e., the 2015 Agreement) which provides in pertinent part as follows:

> (b) Excluded Trading Assets. Notwithstanding anything in this Agreement to the contrary, the Trading Asset Sellers shall not sell, assign or transfer to Purchaser, and Purchaser shall not acquire or make any payments or otherwise discharge any Liability of the Trading Asset Sellers which respect to the following properties, assets and rights (the "Excluding Trading Assets"), all of which are expressly excluded from the purchases and sales contemplated hereby and, as such, are not included in the Purchased Trading Assets:
>
> . . .
>
> (xiii) all claims, causes of action and choses in action of the Trading Asset Sellers against (A) Allston Trading for spoofing trading activities prior to the First Closing Date or any other market participant or exchange, in each case which relate exclusively to Trading and (B) any other Person arising under or with respect to any of the Excluded Trading Assets (collectively, the "Excluded Actions") . . .

(Dckt. #113 at 12–13).

---

[4] "Deceptive Orders" occurred when Allston entered orders to buy or sell U.S. cash Treasury instruments even though it never intended to execute those orders and later cancelled them. (*Id.* ¶¶1, 3). "Aggressor Orders" occurred when Allston placed orders in the opposite direction of its Deceptive Orders for the same Treasury instruments at the same price Deceptive Orders once the market moved in the direction of the Deceptive Orders. (*Id.* ¶3).

### D.     The CME arbitration.

Chopper, which filed this lawsuit against Allston on March 9, 2019, alleges its SEA and 10b-5 claims in Count I of its Complaint and its ICFA claim in Count II.  (Dckt. ##1; 27 ¶¶43–60).  Chopper simultaneously filed an arbitration demand with the CME alleging that Allston spoofed the Treasury futures markets on exchanges operated by the Chicago Board of Trade ("CBOT").  *See Chopper Trading LLC v. Allston Trading LLC*, No. 19-cv-01674, 2021 WL 3709188, at *2 (N.D.Ill. Aug. 20, 2021).  In the arbitration, Allston argued that Chopper's claims against it were time-barred under: (1) CBOT Rule 609 which requires a claimant to initiate dispute-resolution procedures within two years of the date on which it knew or should have known that it was injured by a trading violation; and (2) the Commodity Exchange Act ("CEA"), which requires claims to be brought "not later than two years after the date the cause of action arises."  7 U.S.C §25(c); (Dckt. #120-1 at 3–7).

On July 1, 2020, the CME arbitration panel issued an order which stated that the case would "proceed[] first on the threshold issue of the applicability of the limitations period to Chopper's claim . . . [and] [w]hether there is any basis for tolling the limitations period will be decided after the hearing."  (Dckt. #113-2).  To counter Allston's argument that the 2015 Agreement reflected its knowledge that Allston caused it to sustain a spoofing injury, Chopper presented testimony at the arbitration hearing from its president to the effect that Allston was named in the 2015 Agreement "solely based on rumors heard up to that time" and that "rumors had pointed to" between twenty and thirty "different firms" as being the ones that had spoofed the treasury markets.  (Dckt. #120 at 11).  Chopper's president further testified that Chopper "had no idea who was harming [it]" and that if it had known Allston was responsible, it "would

have sued then and there" but that Chopper did not have "firsthand information" it was Allston until 2018.  (*Id*.)

Following the hearing, the arbitration panel issued its October 26, 2020 order, which stated the following:

> We, the undersigned, being the Arbitrators selected to decide the issues in the above captioned matter, have considered the arguments and evidence presented at the hearing held in accordance with Chapter 6 of the rules of CBOT on October 19 and 20, 2020 and the parties' submissions in connection therewith.  In full and final adjudication of the issues in dispute, we:
>
> ORDER that [Chopper's] Second Amended Arbitration demand is denied as untimely and without basis for tolling; and
>
> ORDER that [Allston's] request to present a motion for an award of attorneys' fees is denied.

(Dckt. #113-4.)

## IV.     ANALYSIS

### A.     Chopper's claims are barred by the doctrine of collateral estoppel.

#### 1.     Allston's motion to dismiss pursuant to the doctrine of collateral estoppel is properly brought under Rule 12(b)(6).

As an initial matter, the Court must determine whether Allston's motion to dismiss pursuant to the doctrine of collateral estoppel is properly brought under Rule 12(b)(6).  Collateral estoppel is an affirmative defense.  *New W. v. City of Joliet*, No. 05 CV 1743, 2017 WL 6540046, at *2 (N.D.Ill. Aug. 14, 2017), *aff'd sub nom. New W., L.P. v. City of Joliet, Illinois*, 891 F.3d 271 (7th Cir. 2018).  Accordingly, defendant's argument on collateral estoppel "implicates the pleading principle that [t]he mere presence of a potential affirmative defense does not render the claim for relief invalid."  *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016) (cleaned up).  "A plaintiff ordinarily need not anticipate and attempt to plead

around affirmative defenses." *Id.*, *quoting Chi. Bldg. Design v. Mongolian House, Inc.*, 770 F.3d 610, 613 (7th Cir. 2014).

However, "there exists a narrow and pragmatic exception to the general rule that affirmative defenses lead to dismissals under Rule 12(c) rather than Rule 12(b)(6): if the affirmative defense is clear from the face of the complaint, the court may dismiss under Rule 12(b)(6) instead." *Holmes*, 141 F.4th at 822; *Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008). "The face of the complaint refers not just to its four corners but includes sources courts ordinarily consider when deciding a Rule 12(b)(6) motion." *Holmes*, 141 F.4th at 822; *Geinosky*, 675 F.3d at 745 ("[a] motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice."); *New W.*, 2017 WL 6540046, at *2. In short, "when the face of the complaint admits all the ingredients of an impenetrable defense, the plaintiff has pleaded himself out of court, and the district court may dismiss for failure to state a claim under Rule 12(b)(6)." *Holmes*, 141 F.4th at 822 (cleaned up).

In this case, all the facts relevant to Allston's collateral estoppel defense are ascertainable from Chopper's Complaint, documents critical to the Complaint and referred to therein (e.g., the 2015 Agreement), judicially noticeable records, and from Chopper's opposition brief and the attachment thereto (i.e., Allston's CME pre-hearing brief). Allston's motion to dismiss for collateral estoppel is therefore properly brought under Rule 12(b)(6). *See, e.g.*, *Madura v. Bank of Am., N.A.*, 767 Fed.Appx. 868, 871–72 (11th Cir. 2019) (affirming dismissal of complaint based on collateral estoppel); *M&M Stone Co. v. Pennsylvania*, 388 Fed.Appx. 156, 158–59, 161–62, 164 (3d Cir. 2010) (rejecting plaintiff's argument that the district court never should have considered collateral estoppel/issue preclusion on a motion to dismiss and affirming the

9

grant of dismissal based on that defense); *Mohammed v. Naperville Community Unit School District 203*, No. 19 C 6525, 2021 WL 428831, at *1, 4–7 (N.D.Ill. Feb. 8, 2021) (granting motion to dismiss based on collateral estoppel).

### 2. The elements of the doctrine of collateral estoppel.

"The doctrine of collateral estoppel, or issue preclusion, bars re-litigation of an issue that previously was decided by a court so long as the party against whom the doctrine is asserted had an opportunity to fully litigate the issue." *Legghette v. Chicago Police Dep't*, No. 20 C 0149, 2025 WL 1489165, at *4 (N.D.Ill. May 23, 2025) (citing *Riley v. Calloway*, 882 F.3d 738, 742 (7th Cir. 2018)). It is well-settled that "[a]bitration awards may be given the same collateral estoppel effect as court judgments." *See, e.g.*, *BEM I, LLC v. Anthropologie, Inc.*, No. 98 C 358, 2000 WL 1849574, at *11 (N.D.Ill. Dec.15, 2000), *aff'd*, 301 F.3d 548 (7th Cir. 2002) (citing cases); *FW Assocs. LLC v. WM Assocs. LLC*, No. 18 C 5081, 2019 WL 354953, at *5 (N.D.Ill. Jan. 28, 2019) (same). The rules for when collateral estoppel applies in federal and state courts are "practically the same." *BEM I*, 2000 WL 1849574, at *11. In particular, collateral estoppel applies under both federal and Illinois law "when (1) the party against whom the doctrine is asserted was a party to the earlier proceeding; (2) the issue was actually litigated and decided on the merits; (3) the resolution of the particular issue was necessary to the result; and (4) the issues are identical." *Id.*; *Agha v. Uber Techs., Inc.*, 148 F.4th 910, 914 (7th Cir. 2025); *Kraushaar v. Flanigan*, 45 F.3d 1040, 1050 (7th Cir. 1995).

In its opposition, Chopper's sole argument is that the issue decided by the CME arbitrators is not identical to the issue before the district court—thereby waiving any argument with respect to the remaining factors. *See, e.g.*, *Sroga v. Rendered Servs. Inc.*, No. 19-CV-2299, 2019 WL 6173424, at *1 (N.D.Ill. Nov. 20, 2019) ("It is a longstanding rule that a plaintiff

10

waives his claims when he fails to develop arguments or fails to respond to alleged deficiencies in a motion to dismiss.") (citing *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011)). The Court therefore focuses on the "identical issue" element. For purposes of completeness, however, the Court will also address the question of whether Chopper had a full and fair opportunity to be heard in the earlier proceedings.

i.    **The issue in the case at bar is identical to the issue adjudicated by the CME arbitrators.**

"Generally, there is good reason to treat the determination of issues in an arbitration proceeding as conclusive in a subsequent proceeding, just as determinations of a court would be so treated." *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 637 F.Supp. 1333, 1336 (N.D.Ill. 1986) (cleaned up). Thus, the first step in applying the collateral estoppel doctrine is to figure out exactly what issue was determined in the previous arbitration. *Id.* "The Court must decide, based on th[e] record, whether a rational factfinder could have reached a conclusion based upon an issue other than that which the defendant seeks to foreclose from consideration." *Id.* When the issue for which preclusion is sought is the only rational one the factfinder could have found, then that issue is considered "determined" by the factfinder, even if no explicit finding of that issue has been made." *Id.* at 1336–37; *Cooper v. Chicago Transit Authority*, No. 95 C 2616, 1996 WL 520855, at *12 (N.D.Ill. Sept. 10, 1996) (same); *Stofer v. First Nat'l Bank of Effingham*, 571 N.E.2d 157, 163 (Ill.App. 1991) (same).

Here, the arbitration panel expressly stated that it was proceeding first on the threshold issue of the applicability of the limitations period to Chopper's claim and whether there was any basis for tolling the limitations period. (Dckt. #113-2.) As such, whether Chopper learned of its claims against Allston for the first time in 2018 was a key factual issue. To this point, as its opposition brief explains, Chopper presented testimony at the arbitration hearing that "[f]rom

11

2012 through the sale of January of 2015, rumors had pointed to different firms [including] Allston [as] potentially being the firm . . . that harmed Chopper" but Chopper did not have "firsthand information" it was Allston until 2018. (Dckt. #120 at 11–12). Notwithstanding this testimony, it is clear from the CME arbitrators' decision that Chopper's Second Amended Arbitration Demand was "untimely and without basis for tolling," that the only "rational" conclusion the arbitrators could have reached was that Chopper did not first learn of its claim in 2018. *See, e.g. Tamari*, 637 F.Supp. at 1336–37; *cf. Hybert v. Shearson Lehman/Am. Ex. Inc.*, 688 F.Supp. 320, 326 (N.D.Ill. 1988) (finding arbitrators' decision—which stated only "No award rendered"—was "fatally terse" and thus insufficient to support the application of collateral estoppel).

Chopper argues Allston cannot show that the issues to be decided by this Court were actually decided in the arbitration. In particular, Chopper points to Allston's argument during the arbitration that "Chopper's knowledge (or lack thereof) of Allston's involvement" and "federal law" were both "irrelevant" to the arbitrators' decision on when the limitations period on Chopper's claims commenced, and Allston's assertion that the panel was free to impose requirements that exceeded federal law. (Dckt. #120 at 6–8 (citing *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 154 (2015) ("[I]ssues are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits may be the same."))); *see also IOENGINE, LLC v. PayPal Holdings, Inc.*, 607 F.Supp.3d 464, 488-89 (D.Del. 2024), *aff'd sub nom. Ingenico Inc. v. IOENGINE, LLC*, 136 F.4th 1354 (Fed. Cir. 2025) (prior decision based on preponderance of the evidence standard could not be given collateral estoppel effect in subsequent proceeding governed by clear and convincing standard) (citing *B&B Hardware*).

However, as the Supreme Court made clear in *B&B Hardware*, issue preclusion can apply even if "different statutory provisions" are involved so long as the same standard applies under both statutes. 575 U.S. at 154; *In re Johnson*, 584 B.R. 895, 902 (Bankr. D.N.D. 2018) ("[T]he question is not whether the arbitrator decided whether Debtor is entitled to a bankruptcy discharge; it is whether the arbitrator considered the same material factual issues and legal standards in deciding the fraudulent nondisclosure and breach of fiduciary duty causes of action as this Court considers in deciding whether Portal Investments met the elements of its section 523 claims.") (citing *B&B Hardware*). Here, as Allston noted in its arbitration brief, the same standard applied when determining whether Chopper's CBOT Rule 609 and federal CEA claims were time-barred. (*See* Dckt. #120-1 at 7 ("even assuming the CEA's limitations period were to apply to Chopper's claims instead of Rule 609, Chopper's claims would still be time-barred. The CEA requires claims to be brought 'not later than two years after the date the cause of action arises.' 7 U.S.C. §25(c). As with Rule 609, there is no requirement that a plaintiff needs to identify the defendant before" the statute begins to run.)). Chopper does not argue to the contrary.

Given this, the application of collateral estoppel in this case depends on "whether a *factual* issue in dispute has been resolved in prior litigation, *not* on whether the legal theory of recovery is the same." *See Robinson v. Stanely*, 474 Fed.Appx. 456, 458 (7th Cir. 2012) (emphasis added); *Montana v. United States*, 440 U.S. 147, 153 (1979) ("Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on *a different cause of action* involving a party to the prior litigation.") (emphasis added); *Studio Art Theatre of Evansville, Inc. v. City of Evansville, Ind.*, 76 F.3d 128, 131 (7th Cir. 1996). Thus, the fact that

13

Chopper's claims in the CME arbitration concerned CBOT Rule 609 and CEA whereas its claims in this lawsuit concern SEA, Rule 10b-5, and ICFA is of no moment.

What is of consequence, however, is that the key factual questions before the CME arbitration panel—namely, whether Chopper (which filed its arbitration demand in March 2019) sought arbitration of its CBOT Rule 609 and CEA claims in a timely manner and, if not, whether there was any basis for tolling the limitations period—were resolved against Chopper. (Dckt. ##113-2; 113-4). Indeed, Chopper now cites the very same evidence that it offered during the arbitration on these issues to support its argument before this Court that it timely filed its federal and state claims. (*See* Dckt. #120 at 11–12). Thus, the factual matters at issue during the arbitration are the factual matters at issue here. Consequently, the determinations by the arbitration panel are conclusive in this subsequent lawsuit that Chopper has brought against Allston for alleged violations of SEA, Rule 10b-5, and ICFA. *Montana*, 440 U.S. at 153; *Robinson*, 474 Fed.Appx. at 458.

### ii. Chopper had a full and fair opportunity to be heard in the CME arbitration.

One important limitation on claim preclusion doctrine is that the losing party in the prior proceeding must have had a full and fair opportunity to litigate the issue now sought to be advanced in the current action. *Jones v. City of Alton, Ill.*, 757 F.2d 878, 884 (7th Cir. 1985). Chopper does not argue that it did not have a full and fair opportunity to litigate the issue of whether it learned of its claims against Chopper—only that the issue was not decided by the CME arbitrators—an argument, which for the reasons set forth above, the Court rejects. In any event, it is clear that Chopper was able to present abundant testimony during the arbitration hearing to support its assertion that it did not learn that Allston was allegedly behind the relevant spoofing scheme until 2018. (*See* Dckt. #120 at 11 (detailing testimony elicited from Chopper's

president at the arbitration hearing regarding when Chopper knew Allston was behind the spoofing scheme.))

After weighing this evidence, the CME arbitrators found that Chopper's Second Amended Arbitration Demand was "untimely and without basis for tolling." (Dckt. #113-4). These findings necessarily required the rejection of Chopper's contention that it did not know that Allston was responsible for the spoofing scheme until 2018 because a factual finding in Chopper's favor on this issue could have provided a basis for tolling. *See, e.g.*, *United States v. Norwood*, 602 F.3d 830, 838 (7th Cir. 2010) ("[O]ne may be able to invoke a tolling rule to delay suing if it is not possible even with the exercise of due diligence to identify the injurer."); *see also Tamari*, 637 F.Supp. at 1336–37 (citing *Ashe v. Swenson*, 397 U.S. 436, 444 (1970)) ("When the issue for which preclusion is sought is the only rational one the factfinder could have found, then that issue is considered 'determined' by the factfinder, even if no explicit finding of that issue has been made."); *Studio Art Theatre*, 76 F.3d at 131 ("A necessary implicit finding by the state court, coupled with language that indicates awareness of the issues, is sufficient to preclude relitigation.").

Because the statute of limitations-related issues in this case are identical to the issues adjudicated by the CME arbitrators, Chopper had a full and fair opportunity to be heard on those issues in the CME arbitration, and the other elements of claim preclusion are not disputed (and are plainly met on this record), the Court finds Chopper's claims are barred by the doctrine of claim preclusion and therefore must be dismissed with prejudice. *See, e.g.*, *Scott v. Sutker-Dermer*, 6 Fed.Appx. 448, 449 (7th Cir. 2001) (holding that plaintiff's Fourth Amendment claim "should have been dismissed with prejudice because [plaintiff] is collaterally estopped from

pursuing the claim in federal court."); *Madura*, 767 Fed.Appx. at 873 (same); *Roach v. Verterano*, No. CIV.A. 14-947, 2015 WL 672248, at *10 (W.D.Pa. Feb. 17, 2015) (same).

    **3.**    **Allston's collateral estoppel arguments do not violate the confidentiality provisions ordered by the CME.**

The Court also rejects Chopper's assertion that the Court cannot reach the merits of Allston's collateral estoppel defense because it violates "the confidentiality provisions ordered by the CME as part of the arbitration . . ." (Dckt. #120 at 6). In support of this argument, Chopper relies on the CME confidentiality order, which provides that "[a]ll aspects of this arbitration are confidential and shall not be discussed with or disclosed to the public (including the press), any other members of the [CME], or anyone else other than the Arbitration Panel or its counsel, the parties and their employees or agents . . ." (Dckt. #120 at 6 (citing Dckt. #84-1 at ¶2)).

Chopper's argument fails for two reasons. First, as Chopper acknowledges, the CME confidentiality order further provides that it does not affect "the parties' right to initiate or submit to legal process for the purposes of  . . . any related litigation . . ." (*Id.* at 6 n.4). Chopper contends that Allston's act of filing a motion to dismiss filed in response to the Court's order directing it to answer or otherwise plead to the Complaint does not constitute "submitting" to a legal process. But the Court cannot envision how Allston's action to defend itself against Chopper's lawsuit would *not* fall within the plain and ordinary meaning of "submit[ting] to a legal process" and therefore be considered an exception under the terms of the confidentiality provision. *See, e.g.*, *Washington State Dep't of Soc. & Health Servs. v. Guardianship Est. of Keffeler*, 537 U.S. 371, 385 (2003) (finding that a proceeding involves "legal process" if it "require[s] utilization of some judicial or quasi-judicial mechanism . . . by which control over property passes from one person to another in order to discharge or secure discharge of an

16

allegedly existing or anticipated liability."); *Townsel v. DISH Network L.L.C.*, 668 F.3d 967, 969 (7th Cir. 2012) ("only a formal legal proceeding . . . counts as 'legal process'") (citing *Keffeler*); *City of Chicago v. U.S. Dep't of Treasury, Bureau of Alcohol, Tobacco & Firearms*, 423 F.3d 777, 718 (7th Cir. 2005) (citing *Keffeler*).

Second, in the same submission that it raises its accusations that Allston is in violation of the confidentiality order, Chopper engages in the same alleged "misconduct," by citing CME orders and quoting testimony elicited as part of the arbitration. (Dckt. #120 at 7, 11). Chopper cannot have it both ways. *See Dorr-Oliver Inc. v. Fluid-Quip, Inc.*, No. 3 C 842, 1993 WL 519912, at *2 (N.D.Ill. Dec. 6, 1993) (reclassifying a report under a protective order from the most restrictive category of documents to unprotected where plaintiff intended to present testimony about the report at trial).[5]

In sum: because Allston's act of filing of this motion to dismiss was submitting to a legal process initiated by Chopper, and Chopper, in any event, has presented confidential information in support of its own arguments, the Court rejects Chopper's contention that Allston's use of arbitration-related materials violated the confidentiality provision ordered as part of the arbitration.

### B.    Chopper's claims are time-barred.

Allston also argues that Chopper's claims are time-barred under the relevant statutes of limitation. Chopper's SEA and Rule 10b-5 claims are "timely if filed no more than two years after [Chopper] discovered the facts constituting the violation." *Merck & Co. v. Reynolds*, 559 U.S. 633, 637 (2010) (cleaned up), and its ICFA claim is timely if brought "within three years

---

[5] This conclusion also applies to Allston's use of similar information in support of its statute of limitations affirmative defense.

of the date the claim accrue[d]," i.e., the date when Chopper knew or reasonably should have known of its injury and also knew or reasonably should have known that it was wrongfully caused. *Gater v. Bank of Am., N.A.*, No. 13 C 3267, 2013 WL 5700595, at *1 (N.D.Ill. Oct. 18, 2013) (cleaned up); *Merck*, 559 U.S. at 637 ("A cause of action accrues (1) when the plaintiff did in fact discover, or (2) when a reasonably diligent plaintiff would have discovered, 'the facts constituting the violation'—whichever comes first.").[6] Untimeliness, like collateral estoppel, is an affirmative defense. *See Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 674–75 (7th Cir. 2009). As set forth above, when an affirmative defense is disclosed on "the face of the complaint, the court may dismiss under Rule 12(b)(6)." *Holmes*, 141 F.4th at 822.

Here, Allston asserts that Chopper has pleaded itself out of court because the "face of the complaint" (which includes the allegations of the Complaint as well as the "sources courts ordinarily consider when deciding a Rule 12(b)(6) motion," (*id.*)), pleads facts showing that its lawsuit is barred by the statute of limitations. *See, e.g.*, *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995). In particular, the Complaint alleges that: (1) Allston engaged in spoofing that caused Chopper to sustain millions in losses between 2012 and October 14, 2014; (2) in January, 2015, as reflected by the 2015 Agreement, Chopper bargained for a "carve out" from its sale to DRW in which it expressly retained for itself "all claims" against Allston for "spoofing trading activities" prior to the date its sale to DRW closed; and (3)

---

[6] In other words, the clock "begins to run when the plaintiff would have discovered the violation had [it] been diligent." *McCann v. Hy-Vee, Inc.*, 663 F.3d 926, 929 (7th Cir. 2011) (citing *Merck*, 559 U.S. at 653). This accrual is "irrespective of whether the actual plaintiff undertook a reasonably diligent investigation." *Merck*, 559 U.S. at 653; *see Cancer Found.*, 559 F.3d at 674 ("A plaintiff does not need to know that his injury is actionable to trigger the statute of limitations—the focus is on the discovery of the harm itself, not the discovery of the elements that make up a claim."); *Amin Ijbara Equity Corp.*, 860 F.3d at 493.

Chopper did not file this lawsuit until March 9, 2019, despite the fact that the statute of limitations for its federal claims expired no later than January 2017 and the limitations period for its state law claim expired no later than January 2018.

Chopper makes several arguments in response. First, Chopper points to the requirements of Rule 9(b), which applies to securities fraud claims and requires that a plaintiff plead the who, what, when, where, and how of the alleged fraud. (Dckt. #120 at 8). While Chopper admits that its Complaint alleges that "it discovered that an entity or multiple entities were spoofing the cash treasury markets on BrokerTec and eSpeed from 2012–2014"—thereby satisfying the what, when, where, and how requirements of Rule 9(b)—"it did not discover that the entity doing so was Allston until its present litigation counsel uncovered evidence of Allston's involvement in 2018." (*Id.* (citing Dckt. #27 ¶28)). In short, according to Chopper, the statute of limitations did not begin to run until 2018, and its lawsuit was timely filed within two years of this time.

This argument fails. Chopper, in the 2015 Agreement, expressly carved out from the asset sale to DRW *its* right to pursue a cause of action against "*Allston Trading for spoofing trading activities* prior to the First Closing Date." (Dckt. #113 at 12–13 (emphasis added)). As discussed above in Section II, the 2015 Agreement is "central" to Chopper's complaint and Chopper admits that it is authentic. As such, the 2015 Agreement (which reflects Chopper's knowledge in January 2015 that it had a cause of action against Allston for spoofing) controls over the contrary allegation in paragraph 28 of the Complaint to the effect that Chopper had no knowledge of Allston's involvement until 2018. *See, e.g.*, *Wertymer v. Walmart, Inc.*, 142 F.4th 491, 498–99 (7th Cir. 2025); *Zablocki v. Merchants Credit Guide Co.*, 968 F.3d 620, 623 (7th Cir. 2020). As a result, the statute of limitations began running no later than January 2015, and

Chopper filed this lawsuit long after the applicable two- or three-year statutes of limitations expired.

Chopper further argues that even if the 2015 Agreement can be considered, it does not "incontrovertibly contradict" the allegations of the Complaint because Chopper's identification of Allston as the party that injured it through spoofing in the 2015 Agreement was based on mere "rumor," "hunch" or "unsupported speculation." (Dckt. #120 at 10). As Chopper further explains:

> the retention of claims against all market participants while naming Allston specifically suggests uncertainty on Chopper's part as to who was responsible for spoofing that had injured it, and supports Chopper's evidence that Allston was named in th[e] [2015 Agreement] solely based on rumors heard up to that time, with said rumors changing from identifying non-Allston entities before and to identifying non-Allston entities after this document was drafted.

(*Id.* at 10–11). Chopper asserts that its knowledge that Allston engaged in spoofing as reflected by the 2015 Agreement was not enough to trigger the statute of limitations because "knowledge necessary to trigger the limitations must be 'sufficiently confirmed' beyond 'mere suspicion'; and . . . allegations cannot be made on 'rumor and hunches.'" (*Id.* at 12).

Chopper's back-up argument fails for several reasons. To begin, as Allston points out, the Complaint contains no allegations that the 2015 Agreement's carve out of Chopper's claim against Allston was based on "rumor" and "hunch." (Dckt. #124 at 2).

More fundamentally, a plaintiff is not required to have "confirmation" of a defendant's culpability before the statute of limitations begins to run. *See Alexander v. Oklahoma*, 382 F.3d 1206, 1216 (8th Cir. 2004) (holding that "a plaintiff need not have conclusive evidence of the cause of an injury in order to trigger the statute of limitations" and rejecting the argument that the accrual of a cause of action is delayed "until a plaintiff has detailed knowledge of the level of culpability of each of the actors involved."). As the Seventh Circuit has held, the running of

20

the statute of limitations does not await the completion of a plaintiff's "precomplaint investigation" and "[a] plaintiff is not required to have collected, *before* he files suit, all the evidence he needs in order to win the suit." *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 386 (7th Cir. 2010) (emphasis in original).[7] Instead, the statute of limitations beings to run "when the prospective plaintiff discovers (or should if diligent have discovered) both the injury that gives rise to his claim and the injurer." *Id.* The 2015 Agreement reflects that Chopper had this information in January 2015 even if it was not certain that Allston was the party that injured it.

Chopper—which (once more) unequivocally knew of its injury, including how it was caused and when it was caused as of January 2015—also had the option of filing suit against "doe defendants" and seeking discovery to determine which one of its rival trading firms was responsible for the spoofing within the statute of limitations period. As the Seventh Circuit has recognized, "[t]here's nothing wrong with suing placeholder defendants, then using discovery to

---

[7] None of the cases cited by Chopper support the proposition that a plaintiff must "confirm" the identity of the entity that injured it before the statute of limitation runs. (Dckt. #120 at 10 (citing cases)). To the contrary, in one of the cases, *Fujisawa Pharm. Co. v. Kapoor*, 115 F.3d 1332 (7th Cir. 1997), the Seventh Circuit derided the *Fujisawa* plaintiff's contention 'that the statute of limitations doesn't begin to run until the victim has in hand *all* the facts he needs in order to bring suit immediately.'" *U.S. S.E.C. v. Fisher*, No. 07 C 4483, 2008 WL 2062699, at *5 (N.D.Ill. May 13, 2008), *quoting Fujisawa*, 115 F.3d at 1335 (emphasis in original). In another case, *Bankers Tr. Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683–84 (7th Cir. 1992), the court cautioned that the duty to plead fraud with particularity could not be satisfied by allegations made on "information and belief" supported by "rumor or hunch" "unless they were facts inaccessible to the plaintiff, in which event he had to plead the grounds for his suspicions." The other cases concern inapposite factual scenarios where courts assessed sanctions. *See Byrd v. Hopson*, 108 Fed.Appx. 749, 756 (4th Cir. 2004) (affirming finding that plaintiff engaged in a bad faith effort to harass defendants through federal litigation and that his attorney participated in this effort "by filing and continuing a multi-claim lawsuit lacking any legal or factual basis."); *Mike Ousley Productions, Inc. v. WJBF-TV*, 952 F.2d 380, 382–83 (11th Cir. 1992) (sanctioning counsel for filing and pursuing a claim against a defendant who continuously maintained his non-involvement in underlying controversy based solely on hearsay without any legitimate excuse for failing to conduct a reasonable inquiry regarding the defendant's involvement); *Bockman v. Lucky Stores, Inc.*, 108 F.R.D. 296, 297–99 (E.D.Cal. 1985) (imposing Rule 11 sanctions on counsel because of ethical violations and counsel's filing of a motion based on unverified, unsubstantiated, and unreliable information).

learn and substitute names. This is done all the time." *Rodriguez v. McCloughen*, 49 F.4th 1120, 1121 (7th Cir. 2022) (citing cases); *LJM Partners, Ltd. v. Barclays Cap. Inc.*, No. 19-cv-368, 2023 WL 6311471, at *11 (N.D.Ill. Sept. 28, 2023) ("It is an accepted practice to sue with placeholder defendants and use discovery to learn and substitute names."). All that is required in this scenario is for "a plaintiff who uses placeholders [to] take account of the clock" and substitute the actual name of the defendant(s) before the statute of limitations expires. *Rodriguez*, 49 F.4th at 1121.

Finally, the heightened pleading requirements of Rule 9(b) do not provide a basis for tolling the statute of limitations. To the extent that Chopper had an inability to obtain the information necessary to definitively identify the trading firm that engaged in the spoofing, the Seventh Circuit has held that "Rule 9(b) is relaxed upon a showing of such inability." *Emery v. Am. Gen. Fin., Inc.*, 134 F.3d 1321, 1323 (7th Cir. 1998) ("We don't want to create a Catch-22 situation in which a complaint is dismissed because of the plaintiff's inability to obtain essential information without pretrial discovery (normally of the defendant, because the essential information is in his possession and he will not reveal it voluntarily) that she could not conduct before filing the complaint."); *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 999 (9th Cir. 2010) ("[I]n the securities fraud context we have held that Rule 9(b) may be relaxed to permit discovery in a limited class of corporate fraud cases where the evidence is within a defendant's exclusive possession.") (cleaned up); *Sabbia v. Advanced Health Inst. LLC*, No. 15 CV 6736, 2016 WL 11974785, at *3 (N.D.Ill. Oct. 6, 2016) ("Courts may relax the particularity requirement as to matters peculiarly within the opposing party's knowledge that the pleader is not privy to at the time the document is being drafted.") (cleaned up).

In sum, because the face of the Complaint leaves no doubt that Chopper discovered, or should have discovered, the facts constituting the SEA violation, the Rule 10b-5 violation, and the ICFA violation no later than January 2015, the statute of limitations began running at that time and Chopper's federal and state claims in this action are time-barred.

**CONCLUSION**

For the foregoing reasons, Allston's motion to dismiss, (Dckt. #108), is granted. Chopper's claims against Allston are dismissed with prejudice.

**Date:  December 4, 2025**

**Jeffrey I. Cummings**
**United States District Court Judge**